# NEW YORK POWER & LIGHT CORPORATION v. PORTER, Price Adm'r.

## No. 321.

United States Emergency Court of Appeals.

Heard at New York July 9, 1946.

Decided Oct. 18, 1946.

Lauman Martin, of New York City, for complainant.

Joseph Brenner, of Washington, D. C. (Richard H. Field, Gen. Counsel, of Washington, D. C., Jacob D. Hyman, Associate Gen. Counsel, of Buffalo, N. Y., and Seymour Friedman, Sp. Asst. to the Associate Gen. Counsel, of Washington, D. C., all of the O.P.A., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MARIS, Chief Judge.

The complainant, New York Power and Light Corporation, alleges in this complaint that it was entitled to an upward adjustment of its maximum prices for coke manufactured at its Troy coke oven plant and that in refusing to grant its petition for an increase and in denying its subsequent protest the Price Administrator erred.

Maximum prices for coke are established by Maximum Price Regulation No. 29.[1] Under certain circumstances the regulation provides for upward adjustment of those prices. The complainant relies upon Section 14(a) (2) for its right to an increase. That section reads:

"Sec. 14. Application for adjustment.

"(a) Applications for adjustment of the maximum prices established by this regulation may be filed in the following cases:

   *    *    *    *    *    *

"(2) Where it can be shown (i) that total costs of production of by-product or re-tort gas coke at a particular plant are above oven net realization at existing maximum prices. * * *"

To sustain its contention that it was entitled to an increase for the price of coke manufactured at the Troy plant the complainant submitted evidence as to the actual costs of operation of the Troy plant and of the realization upon all products other than coke manufactured or produced at the plant, among them being breeze, tar, ammonia, sulphate, sulphur, phenol and gas. It urges that the only conclusion to be drawn from this evidence is that the oven net realization was not equal to the total cost of production of coke at its Troy plant and consequently that the requested increase should have been allowed.

■ Upon the basis of the same figures, with the exception of those indicating the realization for gas, the Price Administrator came to a contrary conclusion. In its computation the complainant treated gas as having a realizable value of $0.25 per thousand cubic feet. The Administrator, however, treated gas as having a realizable value of $0.4096 per m. c. f., recomputed the oven net realization upon that basis and concluded that the total cost of production of coke was less than the total recovery. The sole issue, therefore, is whether the Administrator erred in refusing to accept $0.25 per m. c. f., as the recovery value of the gas for the purpose of determining the complainant's right to an adjustment, and in substituting $0.4096 per m. c. f. as the proper figure for that purpose.

The Troy plant at which the gas was manufactured was acquired by the complainant in February, 1945, as the result of the merger of the Hudson Valley Fuel Corporation with it. Prior to the merger and on March 1, 1942, the freeze date of the General Maximum Price Regulation, Hudson Valley Fuel Corporation had sold gas manufactured at the Troy plant to the complainant at $0.4096 per m. c. f. That price, therefore, became the maximum price of the gas under the General Maximum Price Regulation. The Administrator accordingly contends that that price is the maximum price referred to in Section 14(a)

[1] 8 F.R. 16520.

(2) of M. P. R. 29 which must be used in passing on complainant's application.

The complainant calls attention to the fact that whereas Hudson Valley Fuel Corporation was a business corporation subject to the jurisdiction of the Price Administrator and having an established maximum price for the sale of gas, the complainant is a public utility which sells gas to consumers and as such is subject only to the jurisdiction of the Public Service Commission of the State of New York. Its rates and charges for gas are regulated by that commission. Accordingly, since the Price Administrator is expressly prohibited by Section 302(c) (2) of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 942(c) (2), from establishing maximum prices for public utilities, the complainant asserts that there are no maximum prices applicable to its sales of gas.

The complainant's theory is that when the Troy plant came into its ownership through the merger there ceased to be any longer a maximum price for gas manufactured and sold at that plant; that some valuation must be assigned to the gas if the adjustment provision is to be applied and that in the absence of a maximum price 'a reasonable valuation must be placed upon the gas. It asserts that $0.25 per m. c. f. is a reasonable realization value.

As a practical matter it would seem that the price which the complainant itself was willing to pay and did in fact pay immediately prior to the merger for gas manufactured at the Troy plant represented a reasonable valuation for that gas. More significant we think is the fact that in order to accept the complainant's theory it would be necessary to rewrite the adjustment provision of the regulation. In its protest the complainant did not attack the validity of the regulation nor the reasonableness of the test for the allowance of the upward adjustment as promulgated by the Administrator in Section 14(a) (2). Both in the complaint and at the oral argument the complainant disclaimed any intention to attack either the regulation or the adjustment provision of the regulation. It was solely in the application of the adjustment provision to the complainant's situation that it felt aggrieved.

We must, therefore, proceed on the assumption that it was within the power of the Administrator to provide that in applying the adjustment provision the realizable value of each product be taken to be the highest price at which the product could lawfully be sold as provided by the price regulations. The Administrator might have provided in the adjustment provision for the use of the actual price at which the product sold or the fair and reasonable value of the product or, in the case of a public utility, the rates established by the Commission. However, he did not do so and consequently the complainant has no basis in the regulation for substituting what it considers to be a fair valuation in place of the maximum price.

We think that the maximum price established under the General Maximum Price Regulation for gas sold by Hudson Valley Fuel Corporation to the complainant prior to their merger remained the maximum price of the gas after the merger so far as concerns any situation coming within the purview of the Emergency Price Control Act and the regulations issued under it. It is true, of course, that if the problem were one of control of the price of gas the maximum price established by the Administrator would not apply to gas sold by a public utility as part of its service to the public. In this case, however, the maximum price of gas is incidental to and of importance only insofar as it has a bearing upon the question whether the maximum price of coke which the Administrator has established should be increased in the complainant's case. The latter question is clearly within the scope of the Administrator's authority to resolve. We think it is entirely reasonable for the Administrator in resolving this question to require that the realizable value of gas be presumed to be the maximum lawful price which could be charged for that gas if sold in a transaction within the purview of the Emergency Price Control Act. For this purpose it is not important that there be an actual sale of the gas or that the maximum prices be legally enforceable with respect to all sales

of the gas as part of the program of price control.

The complainant alleges that in computing adjustment of coke prices for the Central New York Power Corporation and for the Rochester Gas & Electric Corporation the Administrator used $0.33 per m. c. f. for the gas manufactured at their Utica and Rochester plants, and contends that the Administrator thus improperly subjected the complainant to discriminatory treatment. The Administrator's answer is that the price of $0.33 used for the Utica and Rochester plants was computed on the same basis of determination as that used on the complainant's application.

The complainant's contention might have had merit if level dollars-and-cents maximum prices for all comparable gas producing plants had been established by the applicable regulations. The fact is, however, that under the freeze date method of establishing maximum prices, which is the method utilized in the General Maximum Price Regulation, different maximum prices might be established for gas manufactured and sold by different plants. There is nothing in the record to compel a finding that the gas manufactured at the Utica and Rochester plants was sold on the freeze date at exactly the price charged for the gas manufactured and sold by the Troy plant. We find no evidence to sustain the charge of discrimination.

A judgment will be entered dismissing the complaint.